CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

8/8/2017

JULIA C. DUDLEY, CLERK
BY: s/ JODY TURNER
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **LOREN VARNER**, | ) |
| | ) Civil Action No. 5:17CV00080 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **MICHAEL ROANE**, | ) |
| in his individual capacity, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

# COMPLAINT

Plaintiff, **Loren Varner**, through his undersigned attorney, files this Complaint involving Michael Roane, a law enforcement official, who violated Plaintiff's constitutional rights and caused him great harm in an on-going campaign to harass Varner. Plaintiff will use 42 U.S.C. § 1983 as the vehicle to vindicate his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and to redress the deprivation of his Constitutional rights by Roane. In support of his Complaint, Mr. Varner alleges the following:

# PARTIES

1.

At all times relevant to this Complaint, Plaintiff Loren Varner was a citizen of the United States and a resident of Virginia. Mr. Varner, at all times relevant to this Complaint, had clearly established legal rights under state and federal law and the United States Constitution. Mr. Varner submits himself to the jurisdiction and venue of this Court and is entitled to bring this action under state and federal law for all general, special, compensatory, punitive, and any other permissible damages.

2.

At all times relevant to this Complaint, Defendant Michael Roane was a United States citizen, a Virginia resident, a sworn Deputy of the Augusta County Sheriff's Office, and a supervisory member of the cross-jurisdictional drug task force. At all relevant times to this Complaint, Roane was acting under the color of state law. At all relevant times, Defendant Roane was subject to the laws of the Commonwealth of Virginia and the Constitution of the United States. At all relevant times, Roane was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the Augusta County Sheriff's Office, and of said task force for which

Roane was a supervisory member. Mr. Varner is using 42 U.S.C § 1983 as the vehicle to sue Roane in his individual capacity regarding federal claims.

## JURISDICTION AND VENUE

3.

This Court has original subject matter jurisdiction over the federal claim in this action, in accordance with 28 U.S.C. § 1331, because the claim raises a federal question, under the laws and Constitution of the United States.

4.

This Court has personal jurisdiction over the Defendant because he is domiciled in Virginia.

5.

Venue is proper in the Western District of Virginia under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## INTRODUCTION

6.

Roane is an officer who believes the means justify the ends—no matter how unconstitutional those means are. This time Roane crossed the constitutional line.

Mr. Varner was sitting in a bar/restaurant, minding his business, while Roane was outside asking a person who knows Mr. Varner whether Varner was "dirty," or had drugs on him. When that person told Roane "no" and that he would be surprised if Varner had drugs on him, Roane responded by saying "well, we are about to find out." Roane entered the restaurant and commanded Mr. Varner to get his jacket and step outside. When outside, Roane further commanded Mr. Varner to empty his pockets; then Roane searched Varner's body. Varner was dumb struck as to why Roane was conducting himself this way. After finding no semblance of drugs on Varner, Roane told Varner "we are going to run the dog around your truck." At that point, the "drug dog" came out, a puny looking dog.

7.

The "drug dog" circled Mr. Varner's truck about five times but, oddly, during this process, Roane's drug dog kept moving over to nearby police cars and jumping at those cars, i.e., the drug dog was alerting to drugs in the nearby police cars. Varner became very scared at this point because he knew he had no drugs on him but now began to believe Roane—who had a history with Varner—was trying to plant drugs in Varner's car. Nevertheless, after Roane's drug dog failed to alert with respect to Varner's car, Roane engaged in conspicuous, carefree unconstitutional conduct.

8.

Roane, standing right next to Varner, watched an officer under his control approach the passenger front fender of Varner's car and slap down on the fender. Immediately after slapping down on the fender, Roane's drug dog made a beeline for the fender and started to jump up and paw at the fender. Roane looked at the fender and said, "we now have probable cause to search your car," and indeed Roane and his subordinates searched Mr. Varner's truck—finding absolutely no drugs. Roane commanded and condoned his drug dog's false alert as the ***unconstitutional means*** to reach Roane's end of finding no illegal drugs. This type of conduct must be stopped and that's why Mr. Varner is filing this suit.

## STATEMENT OF FACTS

**A.    Varner and Roane's history**

9.

In 2011, Roane responded to a non-violent, domestic dispute call regarding Mr. Varner and his wife. Roane arrived and smelled marijuana in the home, turning the domestic dispute call into a drug bust by finding marijuana and drug paraphernalia. Varner was arrested and charged with drug related charges.

10.

Fast forward five years later—with Mr. Varner having no further drug-related charges during that five year period—on or about May 6, 2016, Roane, as a member of a drug task force, organized a sting on a woman. During the task force's raid, Varner happened to be present with the woman. Roane had not targeted Varner and had no idea Varner would be present during the raid. Varner and the suspect woman were arrested and both received the same charges.

11.

After the arrest referred to in above paragraph 10, Roane and the task force sent the captured drugs to a drug lab, but no results had come back for over four months (May 6, 2016 through September 22, 2017). During that time, Varner sat in jail for approximately four months with no preliminary hearing because Roane – *the charging officer in Varner's case* – kept "failing to show up" at the hearing. Finally, the hearing was held and the judge ordered Varner's release, stating that once the drug lab results came back, Varner would could face re-arrest.

12.

Roane was angry that Varner was released.

**B.    Roane unconstitutionally detains/arrests Varner, wholly falsifying probable cause to search Varner's car.**

13.

After his arrest on or about May 6, 2016, Varner chose not to take a plea deal, electing a bench trial because he has always professed his innocence to Roane and other officers.

14.

While released and awaiting drug lab results regarding his arrest by Roane, Mr. Varner entered a local bar restaurant located in Waynesboro, Virginia, to have a drink and eat some food.

15.

While Varner was sitting at the bar eating, unbeknownst to Varner, Roane was outside said establishment asking a person who knew Varner whether Varner was "dirty," whether Varner had drugs on him; the person responded by saying "no" and that he would be surprised if Varner had drugs on him; Roane responded by saying "well we are about to find out."

16.

Roane entered said establishment and commanded Mr. Varner to grab his jacket and exit the establishment; Varner obeyed Roane's command.

17.

Once outside said establishment, Roane commanded Mr. Varner to empty his pockets and then, finding nothing, Roane physically searched Mr. Varner's body.

18.

Roane's search of Mr. Varner outside said establishment produced no semblance of drugs.

19.

Roane's search of Mr. Varner outside said establishment produced no semblance of drug activity.

20.

After searching Mr. Varner's body outside of said establishment, Roane told Mr. Varner that he was now going to use a drug dog to search Mr. Varner's truck, which was parked in said establishment's parking lot.

21.

Roane had never seen Mr. Varner driving the truck that he used a drug dog to search on or about January 11, 2017.

22.

On or about January 11, 2017, Roane nor any officer had pulled Mr. Varner over for a traffic violation.

23.

On or about January 11, 2017, Roane nor any officer had seen Mr. Varner with any drugs.

24.

Prior to searching Mr. Varner outside said establishment, on or about January 11, 2017, Roane had not secured a search warrant for any matter related to Mr. Varner; Roane never showed Varner a warrant of any kind on or about January 11, 2017.

25.

Prior to searching Mr. Varner outside said establishment, on or about January 11, 2017, Roane did not ask Mr. Varner if he had any weapons on him.

C.  **The search of Mr. Varner's truck**

26.

After Roane told Varner that he was going to use a drug dog to search Varner's truck, Roane stood next to Mr. Varner as one of Roane's subordinate officer led a drug dog around Varner's truck, approximately five times.

27.

During the time that one of Roane’s subordinate officers led said drug dog around Varner’s truck, the drug dog kept going over to nearby police cars and alerting to drugs in those police cars.

28.

The drug dog never jumped on or at Varner’s truck until one of Roane’s subordinate officer slapped on the fender of Varner’s truck; at that point, said drug dog went straight to the area that was slapped and jumped on and pawed at the specific area slapped by Roane’s subordinate officer.

29.

Once the drug dog jumped on and pawed the fender, after his handler slapped a specified area of Varner's car, Roane smiled and told Varner that he now had probable cause to search Varner’s truck. Roane saw his subordinate officer slap a specified area of Varner's truck immediately prior to Roane’s drug dog making a bee line for said area and jump on and paw.

30.

The search of Varner’s truck, at the direction and command of Roane on or about January 11, 2017, produced no drugs or any drug related material.

31.

Prior to this search, Roane himself triggered drug dogs to make a false alert so that he and his colleagues could search vehicles.

**D**. **Attempt to arrest Varner on DWI**

32.

After Roane failed to find any drugs in Varner's truck or on Varner's person, Roane requested that Varner submit to a breath analysis. Varner said that he was not going to do that because he was not going to drive his truck. Roane then left.

## COUNT ONE (FEDERAL CLAIM)
## 42 U.S.C. § 1983—FOURTH AMENDMENT VIOLATION REGARDING DEFENDANT ROANE'S UNLAWFUL SEIZURE (ARREST) OF MR. VARNER

33.

Mr. Varner hereby reiterates and incorporates by reference the allegations contained in paragraphs 1-32 as if set forth fully herein.

34.

At all times relevant to this Complaint, Mr. Varner had a clearly established right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure of his person by law enforcement officers such as Defendant Roane.

35.

***Based on all facts that have been incorporated to support this Count***, Roane unlawfully seized Mr. Varner because, inter alia, had no arguable probable cause or reasonable suspicion to search Mr. Varner's body, and Roane condoned and commanded *a false* drug dog alert to unlawfully seize Varner, as Roane commanded the search of Varner's subject truck. This was not a traffic stop; this was Roane entering a restaurant with no warrant of any kind and demanding to search Mr. Varner's body and then ordering the search of his truck based on a false drug dog alert by a dog—when left to its own accord—that kept alerting to nearby police vehicles, and never alerted to Varner's truck.

36.

Due to Roane's unlawful conduct, based on the facts incorporated into this count and the allegations within this count, Mr. Varner is entitled to all allowable damages under law.

**COUNT TWO (FEDERAL CLAIM)**
**42 U.S.C. § 1983—SUPERVISORY LIABILITY CLAIM PURSUANT TO FOURTH AMENDMENT VIOLATION REGARDING DEFENDANT ROANE'S UNLAWFUL SEARCH OF MR. VARNER'S TRUCK**

37.

Mr. Varner hereby reiterates and incorporates by reference the allegations contained in paragraphs 1-36 as if set forth fully herein.

38.

At all times relevant to this Complaint, Mr. Varner had a clearly established right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches of his truck by law enforcement officers such as Defendant Roane.

39.

***Based on all facts that have been incorporated to support this Count***, and the fact that Roane was the acting supervisor on the scene regarding he incident that forms the basis of this lawsuit, Roane unlawfully searched Mr. Varner's truck by condoning his subordinate officer's conduct of creating a false "drug alert" with respect to Mr. Varner's truck, and then ordering and participating in the search of Mr. Varner's truck pursuant to a drug dog alert that Roane knew was false. By ordering and condoning a false alert by the subject drug dog, Roane's conduct is no different from making false statements in a probable cause affidavit in order to gain probable cause to search a home or vehicle. Ordering, condoning, and/or ratifying known false drug dog alerts is patently unconstitutional. Roane found no drugs on Mr. Varner's person or in Mr. Varner's car, and neither search should have ever occurred because there existed no organic, constitutional justification for either search—and Roane does not have the liberty to manufacture constitutional grounds

by unlawful means, no matter how important he thinks his end goal may be. Based on the facts, Roane ordered, condoned, and participated in said unlawful search.

40.

Due to Defendant Roane's unlawful conduct, based on the facts incorporated into this count and the allegations within this count, Mr. Varner is entitled to all allowable damages under law.

## ATTORNEY FEES

41.

Plaintiff is entitled to reasonable attorney fees under applicable federal and state law.

## PUNITIVE DAMAGES

42.

The wrongful conduct of Defendant arose to a level that entitles Plaintiff to punitive damages under applicable law regarding his claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Varner respectfully prays for the following relief:

1. That this Court exercise jurisdiction over this case and grant a jury trial;
2. That this Court decide, as a matter of law, all issues not required to be determined by a jury;

3. That this Court award all permissible damages recoverable from the Defendant, including general, special, compensatory, punitive, and any other damages deemed appropriate, in an amount to be determined at trial;

4. That this Court permit recovery of reasonable attorney's fees and costs in an amount to be determined by this honorable Court under applicable law; and

5. That this Court grant any additional relief that this Honorable Court deems appropriate under the circumstances.

Respectfully submitted this 8th day of August 2017,

<div style="text-align: right;">
s/ Jessica Sherman-Stoltz<br>
Jessica Sherman-Stoltz (VSB # 90172)
</div>

**NEXUS CARIDADES ATTORNEYS, INC.**
113 Mill Place Parkway, Suite 105A
Verona, VA 24482
540-466-3596/540-301-8158 FAX
jstoltz@nexuscaridades.com

<div style="text-align: right;">
By <i>/s/ Mario B. Williams</i>____<br>
Mario B. Williams (GSB #235254)<br>
<i>Future Immediate Pro Hac Vice</i>
</div>

**NEXUS CARIDADES ATTORNEYS, INC.**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-654-0288 / 404-592-6225 FAX
mario@goodgeorgialawyer.com
mwilliams@nexuscaridades.com