CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

7/3/18

JULIA C. DUDLEY, CLERK
BY: s/ K. DOTSON
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| LOREN VARNER, | ) | |
|     Plaintiff, | ) | Civil Action No. 5:17-cv-00080 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| MICHAEL ROANE, | ) | By:    Joel C. Hoppe |
|     Defendant. | ) | United States Magistrate Judge |

This matter is before the Court on Defendant Michael Roane's motion for sanctions against Plaintiff Loren Varner, Def.'s Mot., ECF No. 51, which is before me by referral under 28 U.S.C. § 636(b)(1)(A). Roane asks the Court to dismiss this action with prejudice because Varner, invoking his Fifth Amendment right against compelled self-incrimination, refused to answer deposition "questions critical to" Roane's defense. Def.'s Mot. 1; *see* Def.'s Br. in Supp. Ex. 2, Loren Varner Dep. Tr. (May 31, 2018), ECF No. 52-2.[1] The motion has been fully briefed and argued. ECF Nos. 52, 54, 59, 64. Having considered the parties' arguments and the applicable law, I find that Varner refused to answer relevant questions put to him on deposition and his silence—although protected by the Fifth Amendment—could impair Roane's ability to prepare and present a defense to Varner's remaining claim under 42 U.S.C. § 1983. Nonetheless, I also find that dismissing the action is too harsh a sanction and would impermissibly punish Varner for exercising his constitutional right. Accordingly, I will deny in part the motion for sanctions, and I will fashion an appropriate remedy on summary judgment and/or at trial to level the evidentiary playing field and mitigate any potential harm to Roane.

I. Background

---

[1] Pinpoint citations to documents filed electronically with this Court use the footer page numbers generated by CM/ECF and the exhibit labels assigned by the filing party.

1

The following factual allegations are taken primarily from Varner's Complaint. ECF No. 1. Varner's remaining § 1983 claim focuses on a January 2017 encounter between Varner and Roane, a deputy with the Augusta County Sheriff's Office, in the parking lot of a Waynesboro restaurant. Compl. ¶¶ 6–8, 37–40; *see* Order of Jan. 22, 2018, ECF No. 23. Varner alleges that Roane, hoping to find drugs on Varner, instructed Varner to leave the restaurant and told him to turn out his pockets. Compl. ¶ 6. Then, having found "no semblance of drugs," Roane told Varner, "we are going to run the dog around your truck." *Id.* After the drug-detection dog circled Varner's truck a few times, Roane commanded a subordinate officer to prompt the dog to falsely "alert" so Roane could search the truck for drugs. *See id.* ¶¶ 6–8, 29, 31, 39. The officer hit the truck's fender with his hand, and the dog immediately alerted, but Roane did not find any drugs inside the vehicle. *See id.* ¶¶ 28–30. Roane left the restaurant parking lot after Varner refused to take a breathalyzer test. *Id.* ¶ 32. Varner believed that "Roane—who has a history with Varner—was trying to plant drugs in Varner's car" when he confronted him in January 2017. *Id.* ¶ 7.

This history includes an encounter on May 6, 2016,[2] when Roane led a drug task-force raid on a location where Varner "happened to be present." *Id.* ¶ 10. Varner and a female suspect were arrested and charged, and Varner was detained while "the captured drugs" were sent away for testing. *Id.* ¶ 11. After "no results had come back for over four months," a state-court judge released Varner from detention in September 2016. *Id.* Varner "has always professed his innocence to Roane and other officers." *Id.* ¶ 13. Varner alleges that Roane searched Varner's truck in January 2017 because he "was angry that Varner was released" after the May 2016 raid. *See* Compl. ¶¶ 11–15, 37–39. A state grand jury later indicted Varner on one count of manufacturing methamphetamine, in violation of Virginia Code § 18.2-248. *See* Varner Dep. Tr.

---

[2] The Complaint alleges that the encounter and arrest occurred on May 6, but in subsequent filings and during the deposition both parties refer to May 11 as the date of these events.

10–11; Def.'s Br. in Supp. Ex. 3, at 1–2, ECF No. 52-3. His trial in Waynesboro Circuit Court is set to begin on August 10, 2018. *See* Def.'s Br. in Supp. Ex. 3, at 1.

* * *

In May 2018, I issued an order directing Varner to appear for a deposition, as noticed by Roane, on May 31, 2018. Order of May 22, 2018, ECF No. 44. Varner appeared as directed and answered defense counsel's preliminary questions about his § 1983 claims and the facts alleged in his Complaint. *See* Varner Dep. Tr. 16–30. When counsel asked about his May 2016 arrest, however, Varner responded: "Since my case is still pending, before I can provide any information about that case whatsoever, I feel that my criminal [defense] attorney should be present." *Id.* at 31. Roane's attorney asked if Varner was "refusing to testify about the May 2016 incident" even though that incident is "the basis for [his] claims" as alleged in the Complaint. *Id.* 31–32; *see also id.* at 33–38, 40–41. Varner confirmed that his criminal-defense attorney had instructed him "not to speak to anyone about any details or anything about [his] case that's still pending in court" and therefore he was "not going to continue to answer questions related to the [May 2016] occurrence."[3] *Id.* at 40; *see also id.* at 31–38, 40–41, 44–45. Varner's counsel of record in this matter also objected to the questions about the May 2016 arrest and pending prosecution, noting several times that Varner had invoked his Fifth Amendment right not to answer on grounds that his responses could incriminate him. *See id.* at 31–32, 34, 40–41, 45.

Roane now asks the Court to dismiss this action with prejudice to sanction Varner for his "failure to comply with the Court's order, failure to comply with his discovery obligations, and failure to prosecute his lawsuit." Def.'s Br. in Supp. 1, ECF No. 52; *see also id.* at 5, 8–9. Varner

---

[3] Although Roane asserts that "Varner refused to answer *any* questions regarding the May 2016 events in his deposition," Def.'s Br. in Supp. 4 (emphasis added), Varner did answer a few questions about where he was on May 11, 2016, and about the female suspect who was also arrested during the drug task-force raid. *See* Varner Dep. Tr. 30, 38–40, 44. Varner also noted that he had recently testified in a state-court hearing on his motion to suppress evidence seized by police officers during that raid. *See id.* at 9–11, 44–45.

objects that "the events of May 11, 2016—to which [he] invoked his Fifth Amendment right due to pending criminal charges—have absolutely no bearing on whether or not [Roane] manufactured probable cause" to search Varner's truck in January 2017 "by causing a K9 drug dog to false[ly] alert." Pl.'s Br. in Opp'n 1, ECF No. 54. At the motion hearing, Roane's attorney indicated that if the Court did not dismiss the case outright, then Varner should at least be compelled to answer questions about the May 2016 encounter put to him at a supplemental deposition. *See* Fed. R. Civ. P. 37(a)(3)(B)(i). Varner's attorney responded that Varner absolutely would invoke his Fifth Amendment right against any such order.

III. Discussion

Before turning to Roane's specific request for sanctions, the Court must identify the source and scope of its authority to grant the relief sought. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 50 (1991) (noting that a federal court should exercise its inherent powers "with restraint and discretion," and usually only after it determines that no applicable statutes or procedural rules "are up to the task"). Roane asserts that the Federal Rules of Civil Procedure authorize dismissal because Varner "fail[ed] to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A), and "fail[ed] to prosecute or to comply with these rules or a court order," Fed. R. Civ. P. 41(b). *See* Def.'s Br. in Supp. 8 (citing Order of May 22, 2018, at 1–2). I disagree. The Court's May 22 Order directed Varner to appear for the deposition noticed by Roane on May 31, 2018, which he did. Nothing in this Order curtails Varner's ability to invoke his Fifth Amendment privilege against compelled self-incrimination during the deposition or compels Varner to give answers, which, based on his criminal-defense attorney's instructions, he reasonably thought might incriminate him in a pending state-court prosecution. *Cf. Pillsbury Co. v. Conboy*, 459 U.S. 248, 263–64 & n.24 (1983) (stating that federal courts cannot "compel[]

4

testimony in a civil deposition over a valid assertion of the Fifth Amendment privilege, absent a specific assurance of immunity for such testimony omission"). Varner also asserted the privilege in response to a fairly narrow category of questions about the events of May 6, 2016, underlying his § 1983 claims. Contrary to Roane's suggestion, Def.'s Br. 4, this case does not involve an improper "blanket refusal" to answer *any* questions put to a party during his court-ordered deposition, *N. River Ins. Co. v. Stefanou*, 831 F.2d 484, 486–87 (4th Cir. 1987) (noting that the Fifth Amendment privilege "may be asserted and preserved in the course of discovery proceedings, Fed. R. Civ. P. 26(c), but in specifics sufficient to provide the court with a record upon which to decide whether [it] has been properly asserted as to each question"). Accordingly, Roane has not shown that Varner failed to comply with the Court's order of May 22, 2018.

The source and scope of the Court's authority in this matter therefore depends on whether Varner's refusal to answer these particular questions was a valid exercise of his Fifth Amendment privilege during a civil deposition. If it *was not* valid, then Roane would be entitled to Varner's nonprivileged testimony, Fed. R. Civ. P. 26(b)(1), and the Court could sanction Varner for refusing to answer Roane's deposition questions, Fed. R. Civ. P. 30(d)(2), 37(a)–(b). But if Varner's refusal to answer was protected by the Fifth Amendment, then Roane has "no right to information protected by the privilege against self-incrimination," and nothing in the federal discovery rules would permit this Court to issue an order compelling Varner to answer the deposition questions or to sanction his continued refusal to do so. *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087 (5th Cir. 1979) (citing 8 Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2018 (1970)). Indeed, such an order would be contrary to an "express . . . limitation on the district court's power," *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016), to compel discovery over Varner's valid assertion of the Fifth Amendment privilege, *see*

Fed. R. Civ. P. 26(b)(1). Nonetheless, the Court could still craft a "reasonable response to [any] problems and needs confronting the court's fair administration of justice," *Dietz*, 136 S. Ct. at 1892, in the face of Varner's silence, *see Chambers*, 501 U.S. at 50 (noting that courts "ordinarily should rely on the Rules rather than the[ir] inherent power" when the Rules can "adequately" resolve a problem in civil litigation); *Deakins v. Pack*, 957 F. Supp. 2d 703, 739–41 (S.D. W. Va. 2013) (applying "a balancing approach," in a case where the plaintiff refused on Fifth Amendment grounds to answer defendant's deposition questions, in order to mitigate "any prejudice or undue disadvantage" to the defendant); *Johnson v. United Parcel Servs.*, 127 F.R.D. 464, 465–66 (D. Md. 1989) (using "a balancing-of-interests analysis" to "avoid injustice" where the plaintiff refused on Fifth Amendment grounds to answer defendant's deposition questions relevant to his claims for punitive damages).

"A valid assertion of the [Fifth Amendment] privilege requires only the existence of a plausible possibility that the person might be prosecuted in this country." *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633 (E.D. Va. 2006). This protection extends to a plaintiff's deposition, *Deakins*, 957 F. Supp. 2d at 739; *Johnson*, 127 F.R.D. at 465, and to any "information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution," *Maness v. Meyers*, 419 U.S. 449, 461 (1975). The record before the Court shows that Varner, acting on advice of counsel, declined to answer specific questions about his May 2016 arrest and Roane's involvement as "the arresting officer" in his state-court prosecution and that Varner reasonably believed his answers to those questions could be used against him in that pending criminal proceeding. Varner Dep. Tr. 33; *see generally id.* at 31–38, 40–41, 44–45. Accordingly, the federal discovery rules do not authorize the Court to issue an

6

order either compelling Varner to answer Roane's remaining deposition questions about his May 2016 arrest and surrounding events or sanctioning Varner for his refusal to do so. *See Wehling*, 608 F.2d at 1087.

Roane argues that the Court should not accommodate Varner's Fifth Amendment rights because he "voluntarily" filed this lawsuit and based his § 1983 claims in part on Roane's alleged involvement in the May 2016 events. *See* Def.'s Br. in Supp. 7. "But it is inconceivable that by exercising the constitutional right to bring . . . an action a person waives his . . . constitutional right not to be a witness against himself," 8 Wright & Miller, *Federal Practice & Procedure* § 2018 (3d ed. 2018), and no decision binding on this Court has so held, *see Swann v. City of Richmond*, 462 F. Supp. 2d 709, 712 (E.D. Va. 2006). On the contrary, the Supreme Court has instructed that courts cannot "impose a sanction on a litigant that would make an assertion of his Fifth Amendment privilege 'costly.'" *Swann*, 462 F. Supp. 2d at 712 (quoting *Griffin v. California*, 380 U.S. 609, 614 (1965)). "Requiring a plaintiff to choose between proceeding with his lawsuit and claiming the privilege clearly imposes a substantial cost. . . . [that] cannot be justified on the sole ground that the plaintiff chose to initiate the suit and thus can be characterized as a voluntary litigant." *Id.* (quoting *Black Panther Party v. Smith*, 661 F.2d 1243, 1271 (D.C. Cir. 1981)); *see also Deakins*, 957 F. Supp. 2d at 739–40. After all, "an individual 'voluntarily' becomes a plaintiff only because he believes the courts provide the best means of protecting his rights." *Swann*, 462 F. Supp. 2d at 712 (quoting *Black Panther Party*, 661 F.2d at 1271).

Roane also asserts that Varner forfeited his right to invoke the Fifth Amendment privilege at his deposition because he had already testified about his May 2016 arrest in a hearing on a motion to suppress evidence made in his state-court prosecution. *See* Def.'s Br. in Supp. 5,

9. While a person can waive his Fifth Amendment rights by testifying in a judicial proceeding, *In re Phillips, Beckwith & Hall*, 896 F. Supp. 553, 557 (E.D. Va. 1995), the "testimonial waiver" that Roane's argument evokes "only applies to testimony given 'in the context of *the same judicial proceeding*,'" *Skinner v. Armet Armored Vehicles, Inc.*, No. 4:12cv45, 2015 WL 540156, at *2 (W.D. Va. Feb. 10, 2015) (quoting *Klein v. Harris*, 667 F.2d 274, 289 (2d Cir. 1981) (emphasis added)). Varner's decision to testify in his state-court criminal proceeding has no bearing on whether he may invoke his Fifth Amendment rights on the same topic during discovery in this federal-court civil proceeding. *See Skinner*, 2015 WL 540156, at *2. "[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Simmons v. United States*, 390 U.S. 377, 394 (1968). This well-established rule guards against the "intolerable" risk that an accused person will be "obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination." *Id.* ("In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another."). Roane offers no explanation why Varner should be forced to make that choice in this entirely separate § 1983 action.

Varner's decision to assert his Fifth Amendment privilege in this civil action "does not come without consequences," however. *Deakins*, 957 F. Supp. 2d at 740. While the Court cannot impose a sanction that would make Varner's assertion of the privilege too "costly," *Swann*, 462 F. Supp. 2d at 712, it must also ensure that Roane's ability to defend himself against Varner's allegations "is not unduly disadvantaged," *Deakins*, 97 F. Supp. 2d at 739 (quoting *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st Cir. 1996)). Roane asserts that dismissing a claim or action is

"the proper remedy" whenever a plaintiff's decision to invoke his Fifth Amendment rights deprives the defendant of relevant discovery, even when the plaintiff's silence is fully justified under the circumstances. *See* Def.'s Br. in Supp. 6–10. Again, I disagree. Involuntary dismissal is an "extreme sanction" typically reserved for cases where "a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process," and then only after the court determines that less drastic sanctions would be ineffective. *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (discussing the court's inherent authority to dismiss an action). Automatically imposing such a sanction as a *first* resort, as Roane urges here, would exact far too high a price from a plaintiff who legitimately asserts his constitutional right against compelled self-incrimination. *Deakins*, 957 F. Supp. 2d at 739–41; *see also Wehling*, 608 F.2d at 1088.

Of course, Varner cannot invoke the privilege both "as a shield to oppose depositions," *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991), and as a sword "to gain an unequal advantage against the party he has chosen to sue," *Wehling*, 608 F.2d at 1087. *See Deakins*, 957 F. Supp. 2d at 739–40. Thus, the court may fashion an appropriate remedy to level the playing field where a plaintiff refuses on Fifth Amendment grounds to provide discovery on matters relevant to the issues in the lawsuit. *See, e.g., In re Edmond*, 934 F.2d at 1308 (striking party's affidavit opposing summary judgment after the party invoked the Fifth Amendment on the same matters at his deposition); *Deakins*, 957 F. Supp. 2d at 740–41 (same); *Johnson*, 127 F.R.D. at 465–66 (striking plaintiff's claims for punitive damages after he invoked the Fifth Amendment in response to deposition questions "which would negate the malice needed for an award of punitive damages"). This approach "'balance[s] the interests of the party claiming protection against self-incrimination and [his] adversary's entitlement to equitable treatment,'" taking into

account all "'the circumstances of the particular litigation'" and the degree of "prejudice or undue disadvantage" to the party deprived of the relevant information. *Deakins*, 957 F. Supp. 2d at 739–40 (quoting *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 192 (3d Cir. 1994)); *see also Johnson*, 127 F.R.D. at 465 (balancing the "degree of relevancy that the information sought ha[d] to the issues in suit" against the "obvious" fact that "the Court cannot compel the plaintiff, by order, to answer self-incriminating questions"). "Because the privilege is constitutionally based," however, "the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." *Deakins*, 957 F. Supp. 2d at 741 (quoting *Graystone Nash, Inc.*, 25 F.3d at 192).

Varner's constitutionally protected interest in refusing to answer questions about his May 2016 arrest is exceptionally strong, given that he is currently being prosecuted for the alleged criminal conduct underlying that arrest and he has not been granted immunity in that case. *Cf. Brockington v. Boykins*, No. CCB-08-1713, 2013 WL 1326274, at *7 (D. Md. Mar. 29, 2013) (concluding that the plaintiff's assertion of the Fifth Amendment privilege was "relatively weak" where he had "already been convicted or acquitted of a variety of offenses based on [the underlying] events"). That said, Varner's refusal to answer will impair, to a degree, Roane's ability to prepare a defense concerning one of the two events that Varner alleges led Roane to manufacture probable cause to search Varner's truck in January 2017 *because* "Roane was angry that Varner was released" after the May 2016 drug taskforce raid. *See* Compl. ¶¶ 11–15, 37–39. *See Swann*, 462 F. Supp. 2d at 714–15 (noting that courts should consider whether the opposing party could obtain the withheld information from some other source). On the other hand, Varner's invocation of the Fifth Amendment does not limit Roane's ability to testify about his own observations and motivations, or to obtain evidence from other law enforcement officers

10

who were involved in the May 2016 event. Roane may testify from *his* perspective about his "history with Varner," Compl. ¶ 7, which bears directly on Roane's defense that, based on what he knew about Varner in January 2017, it would not have been objectively unreasonable for the officer to suspect that Varner had drugs in his vehicle, Def.'s Br. 10. *See Maryland v. Macon*, 472 U.S. 463, 470–71 (1985) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." (internal quotation marks and citation omitted)). Thus, a more limited remedy than dismissal of the lawsuit is warranted.

Considering these factors, I find that a necessary and proportional remedy is to prohibit Varner from testifying (either through affidavit or at trial) about any matter relating to his May 2016 arrest and the resulting state-court prosecution. *See Edmond*, 934 F.2d at 1308; *Deakins*, 957 F. Supp. 2d at 740. This evidentiary remedy will mitigate any harm to Roane's ability to present his defense on summary judgment or at trial. This remedy also will avoid forcing Varner to choose between proceeding with his lawsuit and claiming the privilege, *Deakins*, 957 F. Supp. 2d at 739–41; *Swann*, 462 F. Supp. 2d at 712, by allowing Varner to produce other evidence needed to prove all essential elements of his remaining § 1983 claim, Compl. ¶¶ 37–40.

IV. Conclusion

For the foregoing reasons, I hereby **DENY IN PART, AND GRANT IN PART** the Defendant's motion for sanctions. ECF No. 51. Varner is hereby **PRECLUDED** from testifying himself, whether by affidavit or in person, as to any matter relating to his May 6, 2016 arrest.

It is so **ORDERED**.

The Clerk shall send a copy of this Memorandum Opinion & Order to the parties.

ENTERED: July 3, 2018

Joel C. Hoppe
United States Magistrate Judge