IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| LOREN VARNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:17-cv-00080 |
| | ) | |
| MICHAEL ROANE, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Loren Varner and defendant Michael Roane, an Augusta County Deputy Sheriff, had an encounter that Varner's complaint characterized as a seizure of his person. Ruling on a motion to dismiss, however, the court explained that the complaint's allegations did not support that there was a seizure, but only that Varner and Roane had a consensual encounter. The court's ruling regarding the consensual nature of the encounter left in the case only Varner's claim that Roane violated the Fourth Amendment in searching Varner's truck during that encounter. Varner's complaint alleges that a drug dog used to search Varner's truck was instead "going over to nearby police cars and alerting to drugs in those police cars." (Compl. ¶ 27, Dkt. No. 1.) Then, Varner contends that one of Roane's "subordinate officers" slapped on the fender of the truck, and the dog jumped up on that area of the truck. Varner asserts that the dog's jumping was an "alert" and that Roane's subordinate purposefully caused that "false alert" by slapping the truck. As to Roane, Varner asserts that Roane was present and that he knew, based on his experience with drug-sniffing dogs, that the alert was false, but Roane nonetheless used that alert to claim there was probable cause to search Varner's truck. The truck was searched, and it is undisputed that no drugs were discovered. (*See generally* Compl.)

Now pending before the court is Roane's summary judgment motion. (Dkt. No. 76.) As discussed in more detail herein, the undisputed facts in the summary judgment record fail to support the complaint's key allegations. Instead, the court concludes that there is no evidence from which a reasonable jury could find that the dog's alert was manufactured. Indeed, the undisputed facts establish that the dog alerted by pressing his nose against the truck, not by jumping. There are no facts that support a conclusion that Roane—or anyone else— manufactured that alert or knew it was manufactured. Nonetheless, that positive alert gave Roane and the other officers probable cause to search Varner's truck. For this reason, discussed in more detail below, the court finds that no reasonable jury could find in Varner's favor on his claim that his Fourth Amendment rights were violated by the search.

Varner has also filed a motion to dismiss his complaint without prejudice. (Dkt. No. 88.) The court will deny this motion as moot in light of its ruling on summary judgment. *See also infra* Section II.C. (explaining that even if the court were to address that motion, it would deny it). All other pending motions also will be denied as moot.[1] *See infra* Section II.D.

## I. BACKGROUND

After the court's ruling on the motion to dismiss (Dkt. No. 23 (Oral Order); Hr'g Tr. 38, Dkt. No. 26), there is one claim remaining in this case: Varner's claim, brought under 42 U.S.C. § 1983, that the search of his truck violated the Fourth Amendment because it was based on a

---

[1] One of the pending motions is defendant's motion *in limine* to exclude plaintiff's two proffered experts. (Dkt. No. 78.) Although the court will deny that motion as moot, it notes that, to the extent that plaintiff seeks to rely on the expert testimony to oppose summary judgment, the court would not consider that testimony for the same basic reasons set forth in the motion *in limine*. Most notably, those reasons are: (1) most of the experts' opinions are based on the allegations in the complaint rather than on the deposition testimony of witnesses; (2) some of the assertions are not proper subjects of expert testimony (such as opinions regarding what the law is or should be), or at least not in this case; and (3) many of the opinions are excludable as irrelevant or under Federal Rule of Evidence 403.

dog's "false 'drug alert'"—an alert that Roane allegedly "commanded and condoned."[2] The court sets forth the pertinent facts below, taken in the light most favorable to Varner.

According to Varner, he was eating at the Tailgate Grill in Waynesboro on January 11, 2017, when Roane entered and directed him to come out into the parking lot. Once out in the parking lot, Roane asked Varner to empty out his pockets. Except for a brief pat-down, Roane did not touch Varner.[3] Immediately following the pat-down, Varner, Roane, and other officers were in the parking lot of the Tailgate. Roane advised Varner that a drug dog was going to be run around Varner's vehicle, and Varner testified in his deposition that he was not worried about the free-air sniff and did not object. (Varner Dep. 119, Dkt. No. 77-2.) A Waynesboro police officer and K-9 officer, Jeremy Johnson, and his trained drug-sniffing dog, Zeke, were already on scene, and they conducted the free-air sniff.

While the dog was performing the free-air sniff, Varner, Roane, and Officer C.J. Taylor were all standing together.[4] They were located up to 50 feet away from Varner's truck, on the driver's side of the vehicle, and they never got any closer to his truck while the free-air sniff was conducted. According to Varner, neither he nor Roane said anything to each other during the time the dog was doing its work. Varner also admitted during his deposition that neither of the officers "were giving any direction or instruction to the dog or the canine officer." (Varner Dep. 138.)

---

[2] As the court explained at the hearing on the motion to dismiss, the court did not decide at that time whether the claim was a claim based on Roane's direct actions and involvement or based on supervisory liability by encouraging the actions of the other offices. Discovery made clear—contrary to the complaint's allegations—that the canine officer who supposedly manufactured the alert was a member of the Waynesboro Police Department and was in no way a subordinate of, or supervised by, Roane. At the time, Roane was an investigator with the Augusta County Sheriff's Department who was assigned to a drug task force. The court still need not resolve that issue here, however, because the undisputed evidence shows there was no constitutional violation by anyone.

[3] Although a portion of Roane's brief is devoted to explaining how the initial encounter between Roane and Varner was consensual, the court has already dismissed Varner's claim alleging that he was seized.

[4] There are differences in their testimony concerning who was watching what and whether there was conversation among them, but the court solely credits Varner's testimony on these issues.

Thus, he is not making any assertion that Roane took any action during the free-air sniff to communicate with or command the canine officer or Zeke to do anything.

According to Johnson's undisputed affidavit testimony and information he provided to dispatch, Zeke alerted to the presence of drugs on the passenger-side door. During the first few times Johnson led Zeke around the exterior of the vehicle, "each time Zeke exhibited changes of behavior at the passenger side door of the vehicle that with my training and experience with him I recognized as Zeke signifying a positive alert for drugs." Then, on the last lap, Zeke gave a positive alert for drugs by "actually pressing his nose" on the door, while "all four of his paws remained on the ground." Johnson avers that after Zeke made his final indication of a positive alert, Johnson verbally conveyed that information to the task force officers, and also advised dispatch. Johnson flatly denies that he or any other officer on scene interfered with or influenced Zeke to alert. (Johnson Aff. ¶¶ 1–6, Dkt. No. 77-1.)

Notably, Varner testified that, because he was standing a distance away on the driver's side of the vehicle, he could not see the dog's actions while on the passenger side of the truck. (Varner Dep. 125–26, 135.) But Varner's account of what he observed during the free-air sniff is slightly different. First, after each of the first four times that Johnson and Zeke had gone around the truck and arrived at the rear of it, Zeke veered away from the truck toward the trunk of the Waynesboro marked police car and put his paws on the police car. After each time, Johnson then pulled the leash, got Zeke off of the police car, and circled the truck again. (Varner Dep. 130–32.) On the dog's final trip around Varner's truck, Varner testified that Johnson smacked the fender (where the hood met the fender) on the passenger side,[5] and the dog then jumped up on the fender, which Varner is now characterizing as an "alert." It was after this that Roane told Varner the dog had

---

[5] It is not clear from Varner's testimony whether he saw the "smack" or heard it.

alerted and that the officers were going to search his truck. (Varner Dep. 135–36.) As noted, no drugs were found.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.3d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

### B. Fourth Amendment Claim

Varner testified that, when Roane told him that the officers would like to have a dog conduct a free-air sniff of his truck, he did not object or say anything in response. He testified that

he was not worried about the dog doing a free-air sniff and that he knew he did not have anything illegal in the truck. (Varner Dep. 119.) Whether Varner objected is not material, in any event, because the Fourth Circuit has noted that having a drug dog "sniff the perimeter of [a] vehicle," which is "stopped in a public place," does not constitute a search under the Fourth Amendment. *United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994). Furthermore, it is well established that once Zeke alerted, there was probable cause to conduct a search of Varner's truck. *See id.* ("When the dog 'alerted positive' for the presence of drugs, the officer was given probable cause for the search that followed."); *United States v. Robinson*, 707 F.2d 811, 815 (4th Cir. 1983) ("The detection of narcotics by a trained dog is generally sufficient to establish probable cause."). Varner does not argue to the contrary.

Varner's dispute is with the alert itself, which he alleges was manufactured. As noted, he theorizes that Johnson, the canine officer, prompted Zeke to alert by slapping the truck. The problem with this theory, however, is that there is no evidence from which a reasonable jury could find this assertion to be true. First of all, Johnson's undisputed affidavit clearly states that Zeke alerted to the truck by pressing his nose on, and pointing to, the passenger side door of the truck location. All four paws were on the ground the entire time of the alert. Johnson subsequently reported to the Drug Task Officers on scene and to Waynesboro dispatch that Zeke had alerted. (Johnson Aff. ¶¶ 4, 6 & exhibits).

Varner relies primarily on his own testimony about the dog repeatedly jumping on the Waynesboro police vehicle,[6] the "smack" by Johnson, and Zeke's jumping on the fender of the truck. Varner testified that, following the dog's jumping on the truck's fender, Roane told him

---

[6] This portion of his testimony is also supported by the testimony of another witness and Varner's friend, Carl Robert Drumheller, who testified that he "thought that was funny, like that dog is ready to go home." (Drumheller Dep. 48–49, 83, Dkt. No. 77-3.) Like Varner, Drumheller also testified that he could not see the passenger side of Varner's truck during the free-air sniff. (*Id.* at 39–40.)

that the dog had positively alerted and that the officers had probable cause to search his truck. Varner testified that he did not hear the canine officer say anything prior to Roane's statement. (Varner Dep. 136.) From this, Varner argues that it was the jumping on the truck that was the "alert," and that the alert was caused by the "smack." Even accepting as true the entirety of the facts observed by Varner and set forth in this paragraph, it does not lead to Varner's conclusion.

Varner still has not presented any facts, based on personal knowledge, to dispute that the dog alerted by pressing his nose against the vehicle and pointing, not by jumping. Additionally, as discussed in the background section, Varner testified that he could not see what occurred right before the "smack" or on the passenger side of the vehicle, where Zeke alerted according to Johnson. Thus, Varner cannot dispute that the alert occurred as Johnson described it. Johnson's undisputed testimony, then, establishes probable cause for the subsequent search of his vehicle.

Varner identifies several factual disputes, however, claiming that they create a genuine dispute of material fact that must be resolved at trial and not on summary judgment. But even resolving the alleged disputes in Varner's favor, there still is not sufficient evidence from which a reasonable jury could conclude that the dog did not alert or that the alert was somehow manufactured. Put differently, even if they are disputes of fact, they are not material.

The first disputed fact, according to Varner, is whether the dog alerted as described by Johnson or whether the dog alerted by jumping and pawing the vehicle's front fender after Johnson slapped the vehicle. (Pl.'s Opp'n Mot. Summ. J. 5, Dkt. No. 91.) Varner continues to insist that the "alert" was the dog jumping on the truck. The problem with this assertion is that Varner has no training or expertise in how K-9 dogs alert generally, let alone any knowledge of how Zeke, in particular, alerts. Even crediting Varner's testimony that there was an unexplained slap or smack on the fender, there is no evidence to tie that slap to the dog's alert of pressing his nose against the

7

truck.[7]  The only competent evidence about the actual alert itself is Johnson's testimony. Furthermore, Varner admits that he did not see what Johnson states was the alert, and thus he has no personal knowledge to refute that the dog engaged in the actions Johnson identified as alerting. There is simply no evidence to support an assertion that the alert was manufactured.

The second purported dispute by Varner concerns the timing of Roane's statement that because there had been an alert, they were going to search the truck.  Specifically, Varner focuses on the fact that he had not heard Johnson say anything about the dog alerting and presumes that Roane –who was standing right next to him—had not heard anything either.  Because Roane told him the dog had alerted after seeing the "slap cued alert," though, Varner contends that the jumping on the car must have been the alert.  (Pl.'s Opp'n Mot. Summ. J. 7.)  Varner also surmises, without factual support, that Roane's extensive experience must have caused him to know that the slap would manufacture an alert.  Roane, however, testified that his attention during the search was focused on Varner and that he did not observe Johnson slap Varner's truck. (Roane Dep. 121:4–6, Dkt. No. 91-2.)  Varner's own testimony about what Roane saw, heard, or knew is not based on personal knowledge and so cannot create a dispute of fact.

But even if Roane, like Varner, mistakenly believed that the alert was the dog jumping on the vehicle, Roane's mistake does not negate the probable cause created by the dog's alert.  It is undisputed that Johnson reported an alert, and he has explained—in the only testimony about how Zeke alerts—that Zeke's alert did not involve jumping on a car.  So, even if Roane saw the dog jump and decided that was an alert before he was ever informed of that fact, that does not result in any constitutional violation of Varner's rights because there nonetheless existed probable cause to

---

[7] Johnson's affidavit also notes that when Zeke completes his work, Johnson is trained to reward him. While in the field, Johnson will "typically speak in an excited voice to reward Zeke after he has completed his work and that makes him jump up."  As Varner notes, Johnson did not state that this is what occurred on the date in question, but it would explain the sequence of events.

search the car.  Varner has no facts to dispute that the officers conducting the search believed the dog had alerted.  At the very least, then, Roane would be entitled to qualified immunity.  *See Plaster v. Boswell*, No. 6:05-cv-6, 2007 WL 3231533, at *6 (W.D. Va. Oct. 30, 2007) (explaining that, where "probable cause actually existed, [defendant officers] are entitled to qualified immunity regardless of whether or not they were aware of the probable cause," because there can be no Fourth Amendment violation based on a search that was, in fact, supported by probable cause).

Third, Varner says that defendant's motion incorrectly characterizes Varner's testimony when it states that Varner did not testify that the dog alerted to nearby police cars.  In his reply, defendant paints this as a matter of semantics, noting that Varner never testified the dog jumped up on multiple police cars, but only the one Waynesboro patrol car.  Regardless of the arguments in the briefs, Varner's deposition testimony is clear that he said the dog repeatedly veered toward or tried to jump on the nearby, marked Waynesboro patrol car (but no other cars) while the dog was circling Varner's truck.  So, the court credits that testimony as true.  But it still does not overcome the fact that jumping on a car is not the way Zeke alerts and that Varner has no information whatsoever that Zeke's jumping on a car or pulling toward another car is a way in which he alerts.

For the foregoing reasons, the court concludes that there are no disputes of fact and that defendant is entitled to judgment as a matter of law.[8]  Accordingly, his motion for summary judgment will be granted.

---

[8] Although the parties devote a portion of their briefing to the issue of whether Varner consented to the subsequent search of his truck, the court's ruling on the dog's alert makes it unnecessary to address whether Varner gave his consent.  Once the officers had probable cause to search, consent became irrelevant.

**C. Motion to Dismiss**

In light of the court's grant of summary judgment in Roane's favor, plaintiff's motion to dismiss without prejudice (Dkt. No. 88) will be denied as moot. But even if the court were to address the motion to dismiss first, it would deny it or dismiss it only *with* prejudice. The factors the court must consider in ruling on a motion under Rule 41(a)(2) are:

> (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a dispositive motion is pending.

*Hobbs v. Kroger Co.*, No. 98-1831, 1999 WL 156045, at *1 (4th Cir. Mar. 23, 1999); *see also Howard v. Inova Health Care Servs.*, 302 F. App'x 166, 178–79 (4th Cir. 2008) (setting forth same factors). These factors weigh heavily in this case in favor of Roane, especially the first, third, and fourth factors.

**D. Other Pending Motions**

There are also a number of other motions pending, many of which were originally referred to the U.S. Magistrate Judge assigned to the case. Specifically, there are four motions filed by Varner. (Dkt. Nos. 70, 71, 74, 85.) Additionally, defendant Roane filed "Objections" (Dkt. No. 84) to an order by the U.S. Magistrate Judge (Dkt. No. 72), and a motion *in limine* (Dkt. No. 78), which the court addresses *supra* note 1. The court briefly discusses these motions and explains why they are mooted by the court's ruling herein.

First, there are three motions filed by Varner (either on the date of the discovery deadline or afterward) in which he seeks additional discovery. (Dkt. Nos. 70, 74, 85.) Notably, though, none of these motions reference Rule 56(d), which states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the

court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Plaintiff's motions fail to even reference Rule 56(d), let alone indicate a need for more discovery *in order to respond to the summary judgment motion*. Moreover, no declaration or affidavit as required by Rule 56(d) has been filed. For all of these reasons, it is plain that these motions do not request Rule 56(d) relief, nor do they require a ruling before the court rules on the summary judgment motion. The court notes, moreover, that these motions sought to obtain discovery past the discovery deadline, including (in part) the depositions of witnesses known to Varner before the close of discovery. For all of these reasons, they will be denied as moot.

The court also has considered Varner's request for an interlocutory appeal. (Dkt. No. 71.) The precise relief he seeks in that motion is unclear. To the extent Varner is requesting an appeal to the district court of the United States Magistrate Judge's June 22, 2018 order (Dkt. No. 66), the court sees no clear error in that order, nor is any aspect of it contrary to law, as would be required for this court to reconsider a U.S. Magistrate Judge's pretrial order. *See* 28 U.S.C. § 636(b)(1)(A). If Varner is in fact seeking an interlocutory appeal to the United States Court of Appeals for the Fourth Circuit from the magistrate judge's order concerning discovery, as is indicated by some of the motion's language and its reference to 28 U.S.C. § 1292(b), the court sees no basis for that request and it will be denied. Furthermore, now that the court will be entering final judgment in the case, there is no need for an interlocutory appeal. If Varner wants to appeal that order, he may do so.

Lastly, Roane has filed objections (Dkt. No. 84) challenging the July 3, 2018 order of the U.S. Magistrate Judge (Dkt. No. 72) that addressed Varner's invocation of his Fifth Amendment rights during discovery and denied Roane's motion to dismiss based on that invocation and other

11

allegedly sanctionable conduct. In his objections, Roane argues that his motion was a dispositive motion because it sought dismissal, albeit based on discovery abuses, and thus that the U.S. Magistrate Judge could only act by report and recommendation and not by order. Roane thus requests that this court engage in *de novo* review of that order and dismiss the action with prejudice for the reasons set forth in the motion to dismiss. The court will vacate that portion of the order denying dismissal, but, in light of the court's summary judgment ruling, any remaining objections to the order are moot.

## III.  CONCLUSION

For the reasons set forth herein, the court will grant defendant's motion for summary judgment and enter judgment in defendant's favor. These rulings and the other rulings described herein will be set forth in a separate order.

Entered: February 28, 2019.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge